| | | | |
|---|---|---|---|
| **STEVEN & MARCIA MATTHEWS** | * | | **CIVIL ACTION** |
| | * | | |
| **VERSUS** | * | | **NO. 09-1291** |
| | * | | |
| **ALLSTATE INSURANCE CO.** | * | | **SECTION "L"(2)** |

## ORDER & REASONS

Before the Court are Defendant Allstate Insurance Company's ("Allstate") Motion to Exclude the Expert Report and Testimony of Don Kotter, Rec. Doc. No. 40, and Allstate's Motion for Summary Judgment. Rec. Doc. No. 48. For the following reasons, the Motion to Exclude the Expert Report and Testimony of Don Kotter is DENIED, and the Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

## I.       BACKGROUND

This case arises out of an insurance coverage dispute involving a homeowner's insurance policy issued on a property damaged by Hurricane Katrina. Plaintiffs Stephen and Marcia Matthew's home located at 4840 Chantilly Drive, New Orleans, Louisiana 70216, was damaged on August 29, 2005, by Hurricane Katrina. Plaintiffs allege that the property suffered damage due to wind and wind-driven rain. Specifically, Plaintiffs claim that wind and wind-driven rain caused damage to the following: slopes, fascia/soffits, gutters, fences, window glass, screens, garage door, exterior fixtures, and ceilings, walls, and floors on the second floor of the home. In addition, Plaintiffs allege that water leaked through the second floor and ruined all the ceilings on the first floor. Furthermore, Plaintiffs claim the wind knocked a tree down in the yard, there was leaking in the sunroom from the upstairs, and the roof over the master bedroom

1

was blown off, causing structural damage to the entire house. Because of the broken windows downstairs, Plaintiffs claim contents were damaged and require replacement. Plaintiffs also claim that all of the foregoing wind-caused damage occurred before the home sustained flood damage.

On September 1, 2005, Plaintiffs opened a claim under their homeowner's policy issued by Allstate for the damage resulting from Hurricane Katrina. The policy only provides coverage for wind-caused damages. Allstate paid $38,553.67 for wind damage to the house, $1,317.75 for wind damage to other structures, $10,169.58 for wind damage to personal property, and $6,126.67 in additional living expenses. Additionally, Plaintiffs received $211,799.00 for structural damage and $55,100.00 for contents under their Fidelity National Insurance Company flood policy.

Plaintiffs have filed the present matter seeking, among other relief, further coverage under their Allstate homeowner's policy for wind-caused damage to their residence. Allstate has filed an Answer denying liability and raising several affirmative defenses.

## II.      Allstate's Motion to Exclude the Expert Report and Testimony of Don Kotter

### A.            Summary of the Motion & Response

Allstate filed a Motion to Exclude the Expert Report and Testimony of Don Kotter. Allstate raises three arguments in support of its Motion. First, Allstate argues that the Court should exclude Mr. Kotter's report because it will not assist the trier of fact. Second, Allstate argues that the Court should exclude Mr. Kotter's report because it does not comply with Federal Rules of Civil Procedure 26(a) and 5(b). Third, Allstate argues that the Court should preclude Mr. Kotter from offering an estimate for repairs because his estimate is not the product of

reliable principles and methods and is not based upon sufficient facts or data.

Plaintiffs filed a Response in opposition to Allstate's Motion. Plaintiffs raise five arguments. First, Plaintiffs argue that Mr. Kotter's testimony is reliable because, (1) his method and supporting documentation are consistent with those relied upon by other certified adjusters and licensed contractors, and (2) he has the necessary experience as an adjuster and construction supervisor to provide his expert opinion. Second, Plaintiffs argue that Allstate incorrectly challenges the weight, and not the admissibility, of Mr. Kotter's testimony. Third, Plaintiffs argue that Mr. Kotter's expert report will assist the trier of fact. Fourth, Plaintiffs argue that Mr. Kotter is not asserting expertise in Integra. Fifth, Plaintiffs argue that Mr. Kotter's expert report and estimate are based upon sufficient facts and data.

Within each of the parties' arguments are a number of sub-arguments. The Court has separated and grouped these arguments into five issues which are addressed following a summary of the law on *Daubert*.

### B.        Standard of Review Under *Daubert*

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This Rule reflects the Supreme Court's decisions of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *Daubert*

charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id*. at 595. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id*. at 595. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Id*. at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.* (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, the Court's role as a gatekeeper does not replace the traditional adversary system and the place of the jury within that system. *Daubert*, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Furthermore, the Fifth Circuit has noted recognized that deference should be given to the jury's role as the proper arbiter of disputes between conflicting opinions. *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)(quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion, rather than its admissibility and should be left for the jury's consideration. *Id.*

C.      **Issues Raised by Allstate's Motion**

1.      *Whether Mr. Kotter's estimate improperly fails to segregate between wind-caused and flood-caused damage.*

Mr. Kotter's report contains an itemized property appraisal on the damage to Plaintiffs' home caused by "windstorm" and "wind damage." *See* Def.'s Br. Ex. E, pp. 15-16. Allstate takes issue with Mr. Kotter's report because the Plaintiffs' home sustained seven feet of flood water, yet this report provides an estimate to repair all the damage to Plaintiffs' home

which is attributed solely to wind damage and not any flood damage. Allstate claims that an estimate to repair all the damage to Plaintiffs' home must distinguish between the cost to repair wind-caused damage and flood-caused damage. Allstate further claims that Plaintiffs must establish coverage under the homeowner's policy caused by a covered loss, i.e. wind-caused damage, and because Mr. Kotter's report does not parse out which damage was caused by wind damage and which was caused by flood damage, the report will confuse the jury and not assist it in understanding or determining the facts at issue. Allstate last argues that Plaintiffs bear the burden of segregating covered wind from non-covered flood damage, and because the report fails to do so, it should be stricken.

In response, Plaintiffs claim that Mr. Kotter's report contains damage assessments limited to wind damage, and thus there is no reason for the report to distinguish between wind and flood caused damages. Plaintiffs note that Mr. Kotter's 111 page report on wind damage is based upon his review of Allstate's own reports, personal inspections, photographs, and interviews with the Plaintiffs. Plaintiffs also note Mr. Kotter's expertise as an adjuster for both insurance companies and claimants, as a supervisor on construction projects, and his use of a methodology employed by other certified adjusters and licensed contractors. Finally, Plaintiffs contend that under the applicable law, Allstate bears the burden of segregating wind from flood damage, and cannot force Mr. Kotter to do so.

Considering these arguments under *Daubert*, the Court finds that Allstate improperly challenges the conclusions reached by Mr. Kotter in his report, i.e. the cost to repair what he has determined to be wind damages, rather than the methodologies employed in or relevancy of Mr. Kotter's report. Because Mr. Kotter's report only addresses wind-caused damage, it does

distinguish between damage caused by wind and damage caused by flood. A jury will not be confused by the clear statements in the report that it pertains to wind-caused damage. If Allstate believes Mr. Kotter's report contains erroneous conclusions, then it may bring up these concerns on cross-examination.

Additionally, Plaintiffs do not dispute their burden to prove damage by a covered loss. In fact, they are relying upon Mr. Kotter's report to support their argument that their home suffered from wind damage, a covered loss, and to demonstrate the cost of this damage.

Finally, the parties raise a legal issue in their briefs-whether they or Allstate bears the burden to segregate between damage caused by covered losses and damage caused by non-covered losses. However, the Court need not address this issue since Mr. Kotter's report purports to deal with only wind damage, a covered loss.[1] Accordingly, Allstate's Motion is denied as it pertains to its argument on segregation of wind and flood damage.

> 2. *Whether Mr. Kotter's report utilizes measurements of damages which violate* Daubert.

The terms of the Allstate homeowner's policy provide that the Plaintiffs have 24 months to complete repairs to their home or else their recovery is limited to the actual cash value of the damages. Allstate argues that because Plaintiffs have not completed their repairs within this time period, they are limited to actual cash value recovery, and thus Mr. Kotter's report improperly uses replacement cost as the measure of damages to Plaintiffs' home. In response, Plaintiffs argue that because Allstate breached the insurance contract by underpaying their damages which prevented them from repairing their home within 24 months, they are entitled to

---

[1]This legal argument is addressed thoroughly in the following analysis of Allstate's Motion for Summary Judgment.

replacement costs, the measure of damages utilized in Mr. Kotter's report.[2]  Because the measure

of damages is in dispute, the Court declines to exclude Mr. Kotter's testimony pertaining to one

of these measures of damage.  Additionally, another section of this Court recently decided a

similar motion in *limine*, and held that evidence of replacement cost value is admissible because

it assists the fact finder in determining actual cash value of the loss which is defined under

Louisiana law as the replacement value minus depreciation.  *McGill v. Republic Fire & Cas. Ins.

Co.*, 2008 WL 4792724, at *1 (E.D. La. Oct. 30, 3008).  The Court agrees with this reasoning

and denies Allstate's Motion as it pertains to Mr. Kotter's measure of damages.

A related argument raised by Allstate is that Mr. Kotter's estimates to repair the roof,

windows, and outside bricks, which the Plaintiffs have already repaired, should be excluded

because the actual repair costs for these items are the proper amount of recovery.  In response,

Plaintiffs argue that the repairs they have completed are only temporary, minor repairs, the cost

of which are not representative of what should be done under the homeowner's policy.  This

Court has excluded expert testimony concerning the cost of repairing a home damaged by

Hurricane Katrina which has already been repaired on the basis that the proper cost for repair of

the damage is the actual repair bill.  *See LaCroix v. State Farm Fire & Cas. Co.*, 2010 WL

2265577, at *4 (E.D. La. June 2, 2010).  However, if these repairs are not fully completed, expert

testimony as to the cost of completion is admissible.  *See id.*  In the present matter, it is disputed

whether Plaintiffs have fully repaired the roof, windows, and outside bricks.   Accordingly, Mr.

Kotter should be permitted to testify as to the costs of fully repairing these items, during which

---

[2]The parties have raised the legal issue of whether Plaintiffs' damages are to be measured
by actual cash value or replacement value.  This issue is discussed thoroughly in the following
analysis of Defendant's Motion for Summary Judgment.

Allstate may raise its challenges to this testimony on cross-examination.  Thus, the Court finds

that Allstate's Motion is denied as it pertains to Mr. Kotter's estimates for already repaired items.

<em>iii.      Whether Mr. Kotter's report is improper due to procedural defects.</em>

Allstate alleges that Mr. Kotter's expert report is in violation of Federal Rule of Civil

Procedure 26(a)(2)(B)(i), (ii), and (iii).  These provisions require that an expert report contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them.  Fed. R. Civ. Pro. 26(a)(2)(B)(I)-(iii).

Allstate claims that Plaintiffs have violated these provisions because Mr. Kotter's expert report

does not include a complete statement of his opinions, the basis or reasons for his opinions, or

the data and exhibits he relied upon.  Allstate further alleges that Mr. Kotter's report only

contains impermissible conclusory statements.

In response, Plaintiffs argue that they have properly submitted Mr. Kotter's 111 page

expert report which includes a list of the data he considered and photographs of the property he

relied upon.  Plaintiffs contend that *Daubert* only requires that Mr. Kotter utilize the practices

accepted in his field, which he has done, and thus no further information must be submitted with

his report.

Based upon the foregoing, it appears that Mr. Kotter's expert report complies with

Rule 26 since it contains very detailed estimates for the cost of repairing Plaintiffs' home,

photographs of the home which he took during his investigation, and a list of documents he

consulted in formulating his estimates.  An expert report cannot state conclusions without

explaining the basis and methodology underlying the conclusions therein. *McGill v. Republic Fire & Cas. Ins. Co.*, 2008 WL 4792724, at *1 (E.D. La. Oct. 30, 2008). The underlying purpose of an expert report is to notify opposing parties of the scope and content of the expert's proposed testimony. *Id.* Mr. Kotter's reports meet these standards, albeit minimally. Any deficiencies in Mr. Kotter's report are issues for the jury to determine, and are properly raised on cross-examination.

> 4.      *Whether Mr. Kotter's report is improper because it is based upon an inspection of Plaintiffs' home almost five years after the damage occurred and because Mr. Kotter failed to interview the Plaintiffs before issuing his report.*

Allstate argues that Mr. Kotter's testimony should be excluded because it is not the product of reliable principles and methods and not based upon sufficient facts or data since, (1) he did not inspect the property until May 8, 2010, nearly five years after Hurricane Katrina, and (2) he did not interview Plaintiffs about the purported damage or repairs. In response, Plaintiffs argue that Mr. Kotter's testimony is admissible because (1) the delay in Mr. Kotter's inspection was caused by Allstate's failure to properly and timely pay Plaintiffs' claim, (2) the property is largely in the same condition as after it was damaged, and (3) Mr. Kotter did in fact discuss the property damage with the Plaintiffs.

The cases cited by Allstate in support of its argument involve properties which were fully repaired before the appraisal expert inspected the home. *See e.g. Tardo v. State Farm Fire & Cas. Co.*, 2009 1804766, at *2 (E.D. La. June 22, 2009). Here, Mr. Kotter inspected the property while the Plaintiffs' home was largely still unrepaired. Any problems with inspecting the home so many years after the damage can be raised on cross-examination. Further, Mr. Kotter's expert report states that the Plaintiffs have been "cooperative in our investigation to

quantify the loss" indicating that he did consult Plaintiffs in some way during his investigation. Thus, the Court denied summary judgment on this issue.

> 5.      *Whether Mr. Kotter is permitted to testify regarding Allstate's use of Integra.*

Plaintiffs raise an argument not included in Allstate's Motion-whether Mr. Kotter is permitted to testify regarding Allstate's use of Integra.  It appears that either, (1) this was a clerical error on the part of Plaintiffs or (2) Plaintiffs are attempting for the first time to include Mr. Kotter's testimony on Integra in his expert report.  Either way, Mr. Kotter should not be permitted to provide an expert opinion on a subject not included in his expert report.

## III.      ALLSTATE'S MOTION FOR SUMMARY JUDGMENT

### A.      Summary of the Motion & Response

Allstate filed a Motion for Summary Judgment.  Allstate raises the following six arguments in support of its Motion:

> (1)      Plaintiffs' structure claims, if successful, will result in an impermissible windfall;
>
> (2)      Plaintiffs have failed to meet their burden of producing evidence of segregable wind damage on their structure and VPL claims;
>
> (3)      Plaintiffs cannot establish that a covered peril rendered their home uninhabitable;
>
> (4)      Plaintiffs cannot establish that a covered peril is the cause of damage under their contents claim or the value of their contents claim;
>
> (5)      Plaintiffs cannot prevail on their statutory penalty claims because they cannot prevail on their contract claims and a reasonable ground for denial for further payment existed; and
>
> (6)      Plaintiffs have not satisfied their pleading requirement for their emotional

distress claim, nor have they presented evidence of compensable emotional distress damages.

Plaintiffs have filed a Response in opposition to Allstate's Motion. Plaintiffs argue that Allstate bears the burden, as a matter of law, of proving what, if any, damage to their home was caused by an excluded peril. Additionally, Plaintiffs argue that they have alleged viable claims for ALE, contents damages, statutory penalties, and emotional distress.

The Court will now discuss the standard of review for a motion for summary judgment, and thereafter will address each of Allstate's arguments, Plaintiffs' responses thereto, and consider these arguments based upon the applicable law and relevant facts.

**B.      Standard of Review**

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all

inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

### C.        Issues Raised in the Motion

The Court will now address the six issues raised by Allstate's Motion for Summary Judgment and Plaintiffs' responses thereto.

*1.        Whether Plaintiffs' structure claims will result in an impermissible windfall.*

Allstate argues that if the Plaintiffs recover on their structure claims they will receive an impermissible windfall. Allstate raises two points in support of its argument, (1) Plaintiffs' homeowner's policy measures the value of their loss by and limits their recovery to the actual cash value of their loss, and (2) Plaintiffs may not recover additional funds for their structure because they have already recovered $75,125.67 more than the actual cash value of their home

13

immediately prior to Hurricane Katrina.  Allstate's argument is based upon language in the Plaintiffs' policy which limits Plaintiffs' recovery to the actual cash value of their property since Plaintiffs failed to repair or replace their home and home contents within two years of the damage.

In response, Plaintiffs argue that there exists an issue of fact as to whether they may recover the actual cash value of their home or the replacement cost of the property.  Plaintiffs claim that because Allstate breached its contract by underpaying their claim, they were not required and not able to repair their home within two years.  Alternatively, Plaintiffs claim that if the Court determines that their damages are limited to the actual cash value of their home, Plaintiffs can rely upon Allstate's actual cash value calculations.  Finally, Plaintiffs argue that the insurance policy does not, as Allstate claims, limit their recovery to the pre-storm value of their home.

This Court has previously held in the context of a breach of insurance contract claim that a genuine issue of material exists where an insurer and an insured dispute whether the insurer has paid only a portion of the cost for necessary repairs covered under the policy.  *See Chateau Argonne Condo. Ass'n v. State Farm Ins. Co.*, 2008 WL 4411654, at *3 (E.D. La. Sept. 19, 2008)("Because it is possible that State Farm may have paid for only a portion of the necessary repairs, there are genuine issues of fact remaining as to the total cost of repairs and whether State Farm may be liable for additional expenses.").  In the present case the parties dispute whether Allstate's payments under the insurance policy were sufficient to indemnify Plaintiffs or whether they were insufficient, preventing Plaintiffs from repairing their home within two years.  Accordingly, there exists a genuine issue of material fact as to whether

Allstate breached the contract by underpaying Plaintiffs' claim and thus prevented Plaintiffs from fulfilling their obligation to rebuild within two years in order to receive replacement value for their damages.

Furthermore, the Fifth Circuit has recently held that, "[w]here contested, the proper measure of actual loss, like the measure of recovery under the policy, is a question of fact." *Bradley v. Allstate Ins. Co.*, 606 F.3d 215, 227 (5th Cir. 2010). Here, the parties dispute whether replacement value or actual cash value is the appropriate measure of Plaintiffs' losses. Under Louisiana law, actual cash value is "computed as the cost of replacing the building as it existed at the time of the accident, taking into account the replacement costs within a reasonable time after the accident, minus depreciation." *Id*. Actual cash value is not synonymous with the pre-storm market value of an insured's home. *Id*. Whether the proper measure of damages is replacement value or actual cash value is a contested question which presents a genuine issue of material fact. *Id*. Accordingly, in the present matter, whether actual cash value or replacement value is the proper measurement of damages turns upon resolution of disputed issues of fact and should not be resolved on summary judgment.

Allstate further argues that Plaintiffs will receive an impermissible windfall recovery if they are awarded further compensation under the homeowner's policy. With regard to impermissible windfall recovery, the Fifth Circuit has recently stated,

> An insured party in Louisiana may generally 'recover under all available coverages provided that there is no double recovery.' The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is 'to place him or her in the same position in which he would have been had no [accident] occurred.' Consequently, 'while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified.' *Bradley v. Allstate Ins. Co.*, 606 F.3d 215, 227 (5th Cir. 2010)(internal citations omitted).

This allows an insured, after subtracting insurance payments already received, to recover any losses still recoverable under the homeowner's policy, subject to the policy limits. *Id.* Thus, under the applicable law, Plaintiffs will not be permitted to receive a windfall; they will only be able to recover, if anything, the balance of their losses, after subtracting what they have already been paid under both their flood policy and their homeowner's policy. The amount of recovery is disputed and thus not properly resolved on summary judgment.

2. *Whether Plaintiffs have failed to meet their burden of producing evidence of segregable wind damage on their structure and VPL claims.*

Allstate argues that Plaintiffs have failed to meet their burden of producing evidence of segregable wind damage. Allstate claims that under Louisiana law, once the insurer proves that an exclusionary clause applies, the burden shifts to the insured to prove that it does not apply, requiring the insured to segregate covered and excluded damage. Allstate further claims that the Fifth Circuit's dictum in *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009), did not alter this Louisiana law. Finally, Allstate argues that Plaintiffs have failed to meet their burden under Louisiana law because (1) they have failed to segregate damage caused by flood from damage caused by wind, (2) any testimony Plaintiffs offer regarding this segregation would be speculative because they evacuated before the storm, and (3) any causation opinions from Don Kotter are inadmissible.

In response, Plaintiffs argue that Allstate, as a matter of law, bears the burden of proving what, if any, damage to their property was caused by an excluded peril. Plaintiffs claim that Louisiana statutory law and jurisprudence mandate that Allstate prove, if possible, the nature and value of the damage the Plaintiffs' property suffered as the result of an excluded peril.

Plaintiffs claim that the case law cited by Allstate has been contradicted by the Fifth Circuit in *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290 (5th Cir. 2009), and *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359 (5th Cir. 2009). Finally, Plaintiffs argue that to the extent that the Court requires them to segregate their wind damages from their flood damages, they have done so through the testimony and report of their expert Don Kotter who has provided an assessment of wind-caused damages only.

Both parties agree that the homeowner's policy issued to the Plaintiffs by Allstate is an open peril policy. However, the parties dispute who is to bear the burden of demonstrating a loss or exclusion under the applicable law. The applicable law, while voluminous, contains contradictions as to the proper burden of proof in a case like the present. The Fifth Circuit and Louisiana Revised Statute 22:1893 shift the burden to the insurer to prove that a policy exclusion applies. Conversely, a number of decisions from this Court have held that if the insurer meets the burden of proving the policy exclusion, the burden shifts back to the insured to prove the amount of segregable damage caused by the excluded peril. This conflicting statutory and case law will now be discussed.

In *Dickerson v. Lexington Insurance Co.*, 556 F.3d at 295., the Fifth Circuit characterized the burden of proof in an insurance contract coverage dispute arising out of damage caused by Hurricane Katrina as follows:

> Under Louisiana law, the insured must prove that the claim asserted is covered by the policy. Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage. Thus, once [the insured] proved his home was damaged by wind, the burden shifted to the [insurer] to prove that flooding caused the damage at issue, thereby excluding coverage under the homeowner's policy. As no one disputes that at least some of the damage to the [insured's] home was covered by the homeowner's policy, [the insurer] had to prove how much of that damage was caused by flooding and was thus excluded from coverage under its

17

policy. *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009).

The Fifth Circuit did not include any further burden shifting to the insured to prove segregable damages. The Fifth Circuit reiterated this same burden of proof in subsequent cases. *See Bradley v. Allstate Ins. Co.*, 606 F.3d 215, 230 n.12 (5th Cir. 2010); *Smith v. Am. Family Life Assurance Co.*, 584 F.3d 212, 218 (5th Cir. 2009); *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009). For example, in *Grilletta v. Lexington Insurance Co.*, 558 F.3d 359, 364 (5th Cir. 2009), the Fifth Circuit stated "under Louisiana law, once an insured suffers a covered loss, the insurer has the burden of proving that a policy exclusion applies to avoid liability. The insurer must demonstrate that the policy exclusion applies by a preponderance of the evidence." *Grilletta*, 558 F.3d at 364.

This Court has adopted the burden of proof as outlined in *Dickerson* in a number of cases. *See Sarkar v. State Farm Fire & Cas. Ins. Co.,* 2010 WL 695753, at *1 (E.D. La. Feb. 23, 2010); *Menzies v. Auto Club Family Ins. Co.*, 2010 WL 566542, at *2-3 (E.D. La. Feb. 11, 2010); *Lightell v. State Farm Fire & Cas. Ins. Co.*, 2009 WL 4505942, at *2-3 (E.D. La. Nov. 25, 2009); Carpenter v. State Farm Ins. Co., 2009 WL 4160809, at *3 (E.D. La. Nov. 23, 2009); *Faith Productions, LLC v. St. Paul Travelers Ins. Co.*, 2009 WL 2823654, at *3 (E.D. La. 2009); *Imperial Trading Co., LLC v. Travelers Property Cas. Co.*, 638 F.Supp.2d 692, 694 (E.D. La. 2009); *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, 2009 WL 86671, at * 11 (Jan. 13, 2009). Moreover, in *Sarkar v. State Farm Fire & Cas. Ins. Co.*, 2010 WL 695753, at *1, *Menzies v. Auto Club Family Ins. Co.*, 2010 WL 566542, at *2-3, and *Lightell v. State Farm Fire & Cas. Ins. Co.*, 2009 WL 4505942, at *2-3, this Court adopted the burden shifting espoused in *Dickerson,* while expressly rejecting the notion of an insured bearing the burden of

segregating damages into covered and non-covered perils. Similarly, in *Pontchartrain Gardens, Inc. v. State Farm General Insurance Co.*, this Court reasoned,

> [The insurer's] motion mistakenly assumes that [the insureds] have the initial burden of segregating their wind and water damages. But under *Dickerson*, [the insureds] must prove only that the insured property sustained some wind damage. It is undisputed that the structure surrounding the...property sustained both wind and flood damage. Thus [the insureds] have carried their burden, and [the insurer] now has the burden of proving which pieces of...property were damaged by flood. Because [the insurer's] motion does not provide such proof, summary judgment is unwarranted. *Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, 2009 WL 86671, at * 11.

Furthermore, in *Imperial Trading Co. v. Travelers Property Casualty Co.*, 638 F.Supp.2d 692, 694-96 (E.D. La. 2009), this Court rejected the argument that *Dickerson* is not controlling or mere dicta. *See id.* at 695. The Court reasoned that *Dickerson* was the controlling authority on which party is to bear the burden of proof in insurance coverage cases on the basis that the Supreme Court of Louisiana has not yet decided the apportionment issue and that the often cited *Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010-11 (La. 2004), which Allstate cites, is the Louisiana Supreme Court's pronouncement on burden-shifting for summary judgment, not for proving an insurance policy exclusion. *Id.* at 695-96.

Finally, "the Louisiana Supreme Court also has consistently held that the burden is on an insurer to prove the applicability of an exclusionary clause in the policy." *Landry v. La. Citizens Prop. Ins. Co.*, 2007-247 (La. App. 3 Cir. 8/27/07); 964 So. 2d 463, 477 (citing *Garcia v. St. Bernard Parish Sch. Bd.*, 576 So. 2d 975 (La. 1991)). This burden of proof espoused by the foregoing jurisprudence is also consistent with the burden of proof under the Louisiana Revised Statutes for insurance claims involving immovable property. Louisiana Revised Statute 22:1893(B) provides that "[i]f damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion

under the terms of the policy." La. Rev. Stat. 22:1893(B).

However, as noted above, there are a number of cases from this Court which were decided after *Dickerson* and which require an additional burden shifting to the insured to demonstrate segregable damages. *See Weiser v. Horace Mann Ins. Co.*, 2009 WL 5194970 (E.D. La. Apr. 6, 2009); *Nunez v. Standard Fire Ins. Co.*, 2009 WL 799756 (E.D. La. Mar. 24, 2009); *Copelin v. State Farm Ins.*, 2009 WL 361088 (E.D. La. Feb. 12, 2009); *Adams v. Lexington Ins. Co.*, 2009 WL 362446 (E.D. La. Feb. 11, 2009). For example, in *Weiser v. Horace Mann Insurance Co.*, 2009 WL 5194970, at *4, the Court characterized the burden shifting in insurance coverage cases as follows,

> Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once an insured suffers a covered loss, the insurer has the burden of proving that the policy exclusion applies by a preponderance of the evidence. If the insurer meets the burden of proving the policy exclusion, the burden shifts back to the plaintiffs to prove the amount of segregable damage caused by the excluded peril. (internal citations and quotations omitted).

Notably these cases rely upon a pre-*Dickerson* case from this Court, *Hyatt v. State Farm Insurance Co.*, 2008 WL 544182 (E.D. La. Feb. 25, 2008), for the burden shifting to the insureds to prove the amount of segregable damage caused by the excluded peril. *See Weiser*, 2009 WL 5194970, at *4; *Nunez*, 2009 WL 799756, at *2 (citing *Copelin* which cites *Hyatt*); *Copelin*, 2009 WL 361088, at *6; *Adams*, 2009 WL 362446, at *3. Accordingly, following the majority in this District and the Fifth Circuit, the Court adopts the *Dickerson* burden shifting for determining whether a loss is caused by a covered or excluded peril. This burden shifting does not require the Plaintiffs to prove the amount of segregable damages.

For the purposes of the present matter, a determination of which party bears the burden of proving segregable damages may be moot however, since Plaintiffs have presented

Mr. Kotter's expert report which purports to deal with solely wind-caused damages covered under the homeower's policy.  Because Plaintiffs have put forth information establishing that a covered peril has caused damage, the burden is now shifted to Allstate to establish that these damages are excluded from coverage.  Finally, following the majority in this Court and the Fifth Circuit, there is no further burden shifting to the Plaintiffs to establish segregable damages in the case that Allstate establishes the damages are issue were caused by an excluded peril.

> 3.    *Whether Plaintiffs have established that a covered peril rendered their home uninhabitable warranting additional living expense benefits*

Allstate argues that flooding, a non-covered peril, and not wind, a covered peril, rendered the Plaintiffs' home uninhabitable and thus Plaintiffs are precluded from receiving additional living expense (ALE) benefits.  In response, Plaintiffs argue that Don Kotter's estimate and Allstate's own claims file establish that the damage to their home was caused by wind, rendering it uninhabitable.  Plaintiffs specifically note that Allstate's claims file states that even without the existence of flooding, the home would have been uninhabitable.  The Court finds for reasons previously stated herein, there exists a genuine issue of material fact as to whether flood damage or wind damage rendered the home uninhabitable.  Furthermore, the case cited by Allstate in support of its argument, *Comeaux v. State Farm Fire & Casualty Co.*, 07-957 (La. App. 5 Cir. 5/27/08); 986 So. 2d 153, is factually distinguishable from the present matter in that there was a factual finding in *Comeaux* that the wind damage was minor as compared to the extensive damage from the flood water.  Here, the extent of damage attributable each to flood and wind is in dispute.

> 4.    *Whether Plaintiffs have established that a covered peril is the cause of damage under their contents claim or the value of their contents claim.*

Allstate argues that it is entitled to summary judgment on the Plaintiffs' contents claim because (1) Plaintiffs cannot establish that a covered peril is the cause of contents damage, and (2) Plaintiffs cannot establish the value of their contents claim. Allstate cites a number of cases from this Court for the proposition that coverage for the contents of personal property is a named peril policy which requires Plaintiffs to prove by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy. *See e.g. Ferguson v. State Farm Ins. Co.*, 2007 WL 1378507, at *2 (E.D. La. May 9, 2007). Allstate claims that because Plaintiffs evacuated before the storm and did not return for a month, and because the house took at least seven feet of floodwaters, Plaintiffs cannot meet their burden to establish that wind caused damage to their contents. Finally, Allstate argues that because Plaintiffs have failed to present evidence of the actual cash value-the required measure of damages-of their purported contents loss, their contents claim is precluded.

In response, Plaintiffs argue that they can establish the loss of their personal property was caused by a covered peril. Plaintiffs note Don Kotter's report and Allstate's own claims file document severe damage to the roof, windows, interior, and fixtures of the second floors. Plaintiffs contend that Allstate fails to explain how second floor contents, untouched by flood waters, have been so severely damaged.

Contents coverage is provided on a named-peril basis. *Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. App'x 671, at **5 (5th Cir. Mar. 11, 2009). Unlike the policy provisions for coverage of the structure, this places the burden of proof on the plaintiffs to demonstrate that the damage to or loss of the contents of their home was caused by wind. *Id*. "Should the plaintiffs meet this threshold requirement, the burden then shifts to the insurer to prove the applicability of

any asserted exclusion by a preponderance of the evidence." *Ferguson v. State Farm Ins. Co.*, 2007 WL 1378507, at *2 (E.D. La. May 9, 2007).

Based upon the arguments raised by the parties and the applicable law, the Court finds that there exist genuine issues of material fact as to whether the contents on the second story of Plaintiffs' home were damaged by wind. This damage is supported by Don Kotter's report and Allstate's claims file, and thus, is not tantamount to impermissible "sheer speculation" as to how the damage to contents occurred. *Jones v. State Farm Fire & Cas. Co.*, 677 F.Supp.2d 923, 928 (E.D. La. Aug. 21, 2009).

5.       *Whether Plaintiffs can prevail on their statutory penalty claims.*

Allstate argues that it is entitled to summary judgment on Plaintiffs' statutory penalty claims because (1) Plaintiffs have no valid underlying contract claim, (2) there exists no evidence that Allstate acted arbitrarily, capriciously or without probable cause, and (3) there exists no evidence that Allstate failed to pay an undisputed amount of Plaintiffs' claim. In response, Plaintiffs contend that they can prevail on their breach of contract claim and there exists sufficient evidence that Allstate acted arbitrarily, capriciously, or without probable cause.

In order to recover statutory penalties against an insurer under La. Rev. Stats. 22:658 and 22:1220, an insured "'must first have a valid, underlying, substantive claim upon which insurance coverage is based.'" *Moffett v. Allstate Indem. Co.*, 2008 WL 5082902, at *4 (E.D. La. Nov. 25, 2008)(quoting *Clausen v. Fid. & Deposit Co.*, 660 So. 2d 83, 85 (La. Ct. App. 1995)). "'The penalties authorized by these statutes do not stand alone; they do not provide a cause of action against an insurer absent a valid, underlying, insurance claim.'" *Id.* "This reflects the general principle that statutes allowing for the imposition of penalties must be strictly

construed.'" *Id.*     In the present matter, there exists a genuine issue of material fact as to whether the insurance contract was breached.  Allstate claims it has paid the proper amount under the contract, while Plaintiffs present evidence via Mr. Kotter's expert report that they are entitled to further coverage amounts within the policy limits for wind damage.

"A cause of action for penalties under § 22:658 requires a showing that: (1) the insurer has received satisfactory proof of loss; (2) the insurer fails to tender payment within thirty day of receipt thereof; and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Bradley*, 606 F.3d at 232 (citing La. Rev. Stat. Ann. § 22:658).  Similarly,§ 22:1973 (formerly § 22:1220) provides in pertinent part:

> A. An insurer...owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured....Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
>
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
>
> (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

Louisiana Revised Statute 22:1893 provides in pertinent part:

> A. (1) No insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy.
>
> B. If damage to immovable property is covered, in whole or in part, under the terms of the policy of insurance, the burden is on the insurer to establish an exclusion under the terms of the policy.

The Fifth Circuit and the Louisiana Supreme Court have held that the insured bears

the burden of proving that the insurer acted in bad faith. *See Kodrin v. State Farm Fire & Cas. Co.*, 314 Fed. App'x 671, 679 (5th Cir. 2009)(citing *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021, (La. 2003)). These Courts have defined "arbitrary and capricious" as "a refusal to pay without reasons or justification." *Id.* Furthermore, "[a]n insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss." *Id.* "An insurer cannot be held to have acted in bad faith simply because it eventually turns out to be wrong about the cause of the damage." *Id.*

In the present matter, there exists genuine issues of material fact as to whether Allstate violated La. Rev. Stats. 22:658 and 22:1220. There is evidence presented by Plaintiffs that suggests Allstate impermissibly relied upon the water mark in their home when calculating flood damages and that Allstate's claims file recognizes the severity of the wind damage their home sustained. Conversely, Allstate presents evidence that it relied upon the undisputed flood damage to the home and its adjusters' evaluation of this damage to make a good faith determination of coverage. This demonstrates a dispute as to the proper amount of coverage for the damage sustained to Plaintiffs' home. Accordingly, summary judgment is denied as it pertains to statutory penalties.

6.      *Whether Plaintiffs can prevail on their emotional distress claim.*

Allstate argues that it is entitled to summary judgment on Plaintiffs' emotional distress claims because (1) Plaintiffs have not satisfied their pleading requirement, and (2) Plaintiffs have put forth no evidence of compensable emotional distress damages. In response, Plaintiffs argue that they have properly asserted their bad faith claim against Allstate, of which emotional stress is a component. Plaintiffs claim that they have put forth sufficient evidence

regarding Mrs. Matthew's emotional distress caused by her repeated conversations with Allstate adjusters and the constant changing of adjusters. Mrs. Matthews has executed a medical release permitting Allstate to review her medical records.

This Court has held that damages for mental distress are recoverable in conjunction with a violation of La. Rev. Stat. § 22:1220, which is discussed in the preceding section. However, if a plaintiff fails to seek mental and emotional distress damages in his or her complaint, these claims may be precluded. *See Empire Inn, LLC v. State Farm Fire & Cas. Co*, 2007 F.Supp.2d 2007, at *2 (E.D. La. Sept. 18, 2007). In the present matter, while Plaintiffs seek damages pursuant to § 22:1220 in their Complaint, they fail to request emotional distress damages. Additionally, Plaintiffs have not put forth any evidence of emotional distress, medical treatment received for such, or designated any expert medical testimony to support such claim. Furthermore, Plaintiffs' counsel appeared to concede at oral argument that his clients have not alleged a viable emotional distress claim. Accordingly, summary judgment is granted on Plaintiffs' emotional distress claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant Allstate Insurance Company's ("Allstate") Motion to Exclude the Expert Report and Testimony of Don Kotter, Rec. Doc. No. 40, is DENIED, and Allstate's Motion for Summary Judgment. Rec. Doc. No. 48, is DENIED IN PART and GRANTED IN PART.

New Orleans, Louisiana, this 4th day of August, 2010.

U.S. DISTRICT JUDGE